PETER A. STRUYK, APPELLANT, v. WILLIAM L. GRIFFIN, RECEIVER, ETC., RESPONDENT.

Submitted May 28, 1930—Decided February 2, 1931.

For the appellant, *Isadore Rabinowitz.*

For the respondent, *Coult, Satz & Tomlinson.*

The opinion of the court was delivered by

DONGES, J. This appeal brings up a judgment of nonsuit entered at Passaic Circuit of the Supreme Court. The appellant and his wife were plaintiffs below in an action to recover damages for injuries sustained in a collision between the automobile in which they were riding and a bus owned and operated by the Boonton, Caldwell, New York Bus Company, of which the respondent is receiver. The court nonsuited as to the appellant and held that the question of defendant's negligence should go to the jury as to the other plaintiff, who had a verdict in her favor.

The collision occurred May 25th, 1929, at the junction of Bloomfield avenue and Pompton Turnpike, in Verona, Essex county, New Jersey. The testimony of the appellant was that he was proceeding in an easterly direction on Bloomfield avenue until he came to the point where that highway intersects the Pompton Turnpike. His testimony was that he stopped on the westerly side of the intersection because the red traffic light was against his movement; that the light flashed green and he then started and turned left near the center of the intersection; that he looked to his right as well as to his rear to see if any vehicles were approaching, and says that "I looked forward to see if the road was clear, which it was;" that he saw nothing approaching; that he could see "somewhere in the neighborhood of about three hundred feet or probably a little more than that." He says: "I stuck my hand out and proceeded; I got on the west-bound track, swung to go across." "I got across pretty well with the front wheels pretty near to the curb line, the northerly curb line." "The far side curb line." "Q. Then what happened? A. I was hit." The appellant made a mark on *Exhibit P-1*, a photograph of the *locus,* which showed that the collision occurred near a traffic standard which is in Pompton Turnpike to the north of Bloomfield avenue. He further said that when he started to make the turn everything was clear to the top of the hill to the east of him. He further said, in response to the question: "And in fact when you started to make your left-hand turn you could see all the

way to the top of the hill commonly known as the Montclair hill, and there was then nothing in sight; is that correct? *A.* That is correct." "*Q.* You then started to make your left-hand turn; is that correct? *A.* After I looked." "*Q.* After you looked, yes. And at that time, when you started to make your turn, everything was clear to the east, as far as you could see? *A.* Yes, sir."

The wife of the appellant testified as follows: "*Q.* Now what did you do, or, rather, what did your husband do as he got to Pompton Turnpike? *A.* We stopped for the red light. *Q.* Then what did he do? *A.* When the light turned green, we went across the road going to the Pompton Turnpike. *Q.* Then did anything happen to you? *A.* Yes, sir; we were turned over. *Q.* By what? *A.* By a bus. *Q.* Did you see the bus before the accident? *A.* Yes, I did. *Q.* Can you tell us, Mrs. Struyk, about how far away it was from you when you first saw it? *A.* About one hundred and fifty feet. *Q.* And how close were you at that time to where the accident happened? *A.* About twenty-five feet. *Q.* And were you going fast or slow? *A.* Slow. *Q.* Was the bus going fast or slow? *A.* Fast."

It was further in evidence that the appellant's automobile had traveled at least fifty feet from the point where it was stopped by the traffic light to the point of the collision, so that when the wife says she saw the bus one hundred and fifty feet away the plaintiff's car had already turned across the tracks to make its way into Pompton Turnpike.

The trial court upon this general testimony granted the motion to nonsuit. He adopted the view that the failure of appellant to observe the approach of the bus was negligence.

From the facts appearing in this case it seems to us that the learned trial judge fell into error and that a question for the determination of the jury was presented. The appellant testified that the bus was not in sight when he began to turn. In this situation, with a view of approximately three hundred feet, he had a right to anticipate that any vehicle approaching from his right would be driven with due regard to his safety. It was not necessary that he should be constantly

looking to his right in the situation presented to ascertain if a vehicle was approaching. He began to make the turn when his way was clear, no other vehicle being within one hundred and fifty feet. Having reached a point where the presence of his car was notice to anyone approaching from his right that he intended to pass over, he had a right to assume that his progress would not be interfered with and that any vehicle approaching on his right would exercise due care to avoid colliding with his automobile. The fact that the collision occurred at the most northerly limit of Bloomfield avenue is some evidence that the plaintiff was reasonably justified in making the turn under the circumstances as he did, and that if due care had been exercised by the operator of the bus, the plaintiff would have reached a place of safety. The negligence of the defendant in the operation of the bus was shown. It was testified that the bus was operated at a high and unreasonable rate of speed; that its brakes were out of order and not in condition to retard its speed or stop it; and that no signal of its approach was given.

In the situation presented the question of the negligence of the appellant was clearly for the jury. *Hyman* v. *Atlantic City Railroad Co.,* 101 *N. J. L.* 124; *Thomas* v. *Metzendorf,* 101 *Id.* 346.

In *Carey* v. *Deems,* 101 *N. J. L.* 419, this court said:

"In this situation the question to be determined was whether the decedent was not justified, if he saw the defendant's car approaching, in presuming when it first came within his view that he would not attempt to pass in front of him, in violation of the statute; or, if the decedent failed to observe defendant's car, to determine whether it was not so far away that he was not negligent in failing to observe its approach."

To the same effect are *Dobbin* v. *Ratiner,* 6 *N. J. Mis. R.* 117, and *Purcel* v. *Pollock,* 105 *N. J. L.* 221.

The judgment is reversed and a *venire de novo* awarded.

338

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.